IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:11-CV-14-BO

SEVERN PEANUT CO., INC. AND )
MEHERRIN AGRICULTURE & )
CHEMICAL CO., )
       Plaintiffs, )
)
v. )   O R D E R
)
INDUSTRIAL FUMIGANT CO. AND )
ROLLINS, INC., )
       Defendants. )

This matter is before the Court on Defendants Industrial Fumigant Co. ("IFC") and Rollins' Motion to Dismiss [DE 13]. Plaintiffs Severn Peanut Co. ("Severn") and Meherrin Agriculture & Chemical Co. ("Meherrin") filed their complaint on April 8, 2011, asserting claims for negligence, negligence per se, and breach of contract as a result of an explosion in Severn's peanut storage dome ("Dome")[1]. Defendants seek to dismiss these claims on the grounds that (1) the economic loss doctrine precludes Plaintiffs' claims for negligence and negligence per se and (2) the damages Plaintiffs seek are excluded by the contract's express terms [DE 13]. Defendants filed the instant Motion on May 23, 2011, and Plaintiffs responded on July 11. A hearing was held before the undersigned on October 26 in Raleigh, North Carolina. The Court has jurisdiction under 28 U.S.C. § 1332 and the motion is ripe for adjudication. Because the jurisdictional basis of this case is diversity of citizenship, this Court applies North Carolina substantive law as would a North Carolina state court. *See Colgan Air,*

---

[1] Severn is a wholly-owned subsidiary of Meherrin. Plaintiffs allege that IFC, an applicator of commercial pest-control fumigation products, acted at the direction of Rollins, its parent company.

*Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).

## BACKGROUND

On April 20, 2009, IFC and Severn entered into a contract for IFC to apply fumigant in the form of Fumitoxin (aluminum phosphide tablets) into Severn's Dome. The Dome's volume is 1,976,503 cubic feet, and the fumigant was to target flour beetles and Indian-meal moths. The parties agreed on a price of $8,604 per fumigation. On August 4, IFC applied the fumigant and sealed the Dome. Seven days later, Severn discovered smoke coming from the Dome and notified IFC. Rollins had Piedmont Risk Management visit the site and assess the situation. Severn and Meherrin allege that the representative said that he was retained by Rollins and that Rollins would take responsibility for suppressing the fire. Rollins then hired Williams Fire and Hazard Control to supervise and coordinate firefighting efforts. Rollins and Williams inserted dry ice into the Dome. On August 29, there was an explosion in the Dome and the Dome and peanuts inside sustained severe damage. Rollins and Williams sprayed water and foam to extinguish the fire. Severn alleges that it sustained $20 million in damages as a result of the fire, which it attributes to IFC/Rollins' improper use of the pesticide, Fumitoxin.

As a result of the explosion, Plaintiffs filed a complaint against IFC and Rollins, asserting claims for negligence, negligence per se, and breach of contract. Defendants seek to dismiss these claims on the grounds that (1) the economic loss doctrine precludes Plaintiffs' claims for negligence and negligence per se and (2) the damages Plaintiffs seek are excluded by the contract's express terms.

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will succeed if a plaintiff fails to establish a "plausible" claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). In analyzing a motion to dismiss, the complaint is construed in the light most favorable to Plaintiffs and its allegations are taken as true. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). For the following reasons, Plaintiffs in this case have asserted facts sufficient to withstand Defendants' Motion to Dismiss.

## I. North Carolina's Economic Loss Doctrine

Defendants first allege that the negligence and negligence per se claims are foreclosed by operation of the economic loss doctrine. That doctrine states that, ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor. *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 351 (N.C. 1978) The doctrine relies on the notion, derived from freedom of contract, that "the parties to the contract either contemplated or should have contemplated these dangers in allocating the risk of loss. *Palmetto Linen Serv., Inc. v. U.N.X., Inc.*, 205 F.3d 126, 130 (4th Cir. 2000) (applying South Carolina law). In other words, "business entities must protect their commercial interests up front through the medium of contract." *Id.*

This doctrine, however, is not without limitation. In *Ports Authority*, the seminal North Carolina case establishing the economic loss doctrine, the Supreme Court of North Carolina also recognized its four exceptions.[2] *Ports Auth.*, 240 S.E.2d at 351. The economic loss doctrine

---

[2]Although some courts have held that North Carolina's economic loss doctrine is limited to products liability cases and has no application to services contracts, *see, e.g., Ellis-Don Const. Inc. v. HKS, Inc.*, 353 F. Supp.2d 603, 606 (M.D.N.C. 2004), *Ports Authority* itself, the case which establishes the doctrine in the state, applies the economic loss bar to a roofing contractor in a suit seeking recovery for negligent roofing work under a services contract. *Ports Auth.*, 240 S.E.2d at 351. Even if the economic loss doctrine does not apply to services contracts, the resulting ruling on this Motion would not change.

does not bar recovery in tort when: (1) injury or damage is to a person or property of someone other than the promisee; (2) injury or damage is to property of the promisee other than that which was the subject of the contract; (3) the promisor was charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm; or (4) there was a willful injury to or conversion of the property of the promisee. *Id.*

In this case, the facts closely parallel those in a case the *Ports Authority* court viewed as squarely within the second exception to the economic loss doctrine. *See Firemen's Mutual Insurance Co. v. High Point Sprinkler Co.*, 146 S.E.2d 53 (N.C. 1966). In *Firemen's Mutual*, the insurer of a warehouse facility sued a sprinkler installation firm for negligence in converting the warehouse's wet system to a dry system, which resulted in a burst pipe and water damage to property in the warehouse. *Id.* at 56. The *Ports Authority* court noted that, because the negligent installation of the sprinkler system caused damage to the promisee's merchandise, the promisor could be held liable in tort for the damages. Similarly, here, the promisor's negligent application of Fumitoxin allegedly caused damage to the promisee's other property, namely the peanuts and Dome. Therefore, this case involves alleged damages that are not subject to operation of North Carolina's economic loss doctrine, and Plaintiffs' negligence and negligence per se claims survive this motion to dismiss. *See also Jewell v. Price*, 142 S.E.2d 1, 4 (N.C. 1965) (sufficient evidence of negligence for damage to a promisee's home in the execution of a contract for the installation of a furnace).

## II. Contractual Exclusions

In the alternative, Defendants argue that the damages Plaintiffs seek on their breach of contract claim are expressly excluded by the terms of the contract. Defendants point to two clauses in the contract between Severn and IFC for support. The first states that "IFC shall in no

event be liable for consequential damages for breach, if any, of...limited warranties, or resulting from the performances of its services and use of any products pursuant hereto." The second states that "the amounts payable by [Severn] are not sufficient to warrant IFC assuming any risk of incidental or consequential damages such as [Severn's] property, product, equipment, downtime, or loss of business." Defendants are correct to note that even companies in an "extensively regulated" industry are permitted to limit their liability by contract. *See Blaylock Grading Co., LLP v. Smith*, 658 S.E.2d 680, 683 (N.C. Ct. App. 2008). However, the damages claimed by Plaintiffs for loss of their peanuts and Dome are, at least arguably, direct damages in this case. Although Plaintiffs are contractually barred from proceeding on claims for consequential damages *on their breach of contract claim*, at this stage they are not barred from pursuing their claims for direct damages.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [DE 13] is DENIED.

SO ORDERED. This 14 day of November, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE