

# QUICK, WIDIS & NALIBOTSKY, PLLC
## ATTORNEYS AT LAW

HUNTER C. QUICK*
HOWARD M. WIDIS**
ALBERT S. NALIBOTSKY+
H. LEE FALLS, III++

Also admitted in:
* Tennessee and West Virginia
**Illinois and New York
+Maryland and South Carolina
++Virginia and District of Columbia

November 22, 2010

Horvath & Weaver P.C.
10 S. La Salle St.
Suite 1400
Chicago, IL 60603

Attn:   David Poindexter

Re:     Travelers v. IFC/Rollins
        DOL:            August 9, 2009
        Loss Location:  Severn, North Carolina

Dear David:

As per our prior conversations, this law firm represents the subrogation interests of Travelers Property Casualty Co. of America ("Travelers") with regard to the fire loss at the domed peanut storage facility of its insured, Meherrin Agriculture & Chemical Co., ("Meherrin") located at 413 Main St., Severn, NC. By way of review, on August 4, 2009, Industrial Fumigant Co., ("IFC") pursuant to a contract with Meherrin, fumigated the domed storage facility containing approximately 20,000,000 pounds of peanuts by applying aluminum phosphide tablets. On August 11, 2009, a Meherrin employee observed smoke coming out of the wheelhouse on the top of the dome. Meherrin advised IFC of the developing situation, and thereafter Bob Cottam, VP of Piedmont Risk Management ("Piedmont") representing IFC/Rollins arrived at the scene. Mr. Cottam subsequently advised that IFC/Rollins would take responsibility for the fire suppression and that they were retaining Williams Fire & Hazard Control, Inc. ("Williams") to manage and supervise the fire suppression activities.

Piedmont and Williams were of the opinion that the fire could be suppressed within the dome and chose to apply dry ice by using the peanut elevator and dropping the dry ice down the main chute. The fire suppression efforts under the direction of Piedmont and Williams continued and on August 29, 2009, there was an explosion resulting in catastrophic damage to the dome. Further firefighting efforts to contain the fire using

**EXHIBIT A**

both water and foam were ongoing over the next few days but the fire continued to burn and the structural integrity of the dome continued to deteriorate. On August 31, 2009, Rollins advised that they were no longer assuming responsibility for the fire suppression and that they were no longer employing Williams.

Following the withdrawal of Williams, the local emergency management coordinator demanded a suppression plan be presented by Meherrin or else he advised that federal and state agencies would assume control and coordinate all fire suppression activities and subsequent clean up. In order to mitigate expense, Meherrin then contracted with Superior Crane, Inc. ("Superior") to coordinate the fire suppression efforts. Superior ultimately implemented a successful plan whereby the burning peanuts were removed from the deteriorating dome and subsequently dredged through a man made pond which they built at the base of the dome. The remains of the peanuts, being unsalvageable, were eventually disposed of by spreading the remains among farms throughout the area.

The adjustment of this claim has now been concluded with ACV damages totaling approximately $19,242,000.00. These damages generally can be characterized as follows:

| | |
|---|---|
| Damage to the Dome | $ 2,327,896.07 ACV |
| Damage to 19,888,964 lbs of peanuts | $ 7,022,600.00 ACV |
| Debris removal | $ 2,675,482.45 |
| Fire Suppression | $ 5,114,118.27 |
| Business income | $ 2,152,285.00 |
| TOTAL CLAIM<br>Including $50,000 deductible | $19,292,381.79 |

Based upon our investigation, we have determined that the fire and resulting loss were caused by the negligence of IFC/Rollins in its application of the aluminum phosphide tablets. As such, we are now making a formal claim against IFC/Rollins for this loss. As you and I have discussed, I am not including the voluminous documentation supporting the damages at this time. We are, of course, prepared to provide the documentation to you if your client(s) are seriously interested in exploring an amicable resolution of the claim without the necessity of our filing suit. Therefore, I would appreciate your advice as to whether your client(s) have an interest in participating in substantive discussions regarding settlement of this matter.

I look forward to hearing from you and thank you for your cooperation.

Sincerely,
QUICK, WIDIS & NALIBOTSKY, PLLC

Howard M. Widis
hwidis@qwnlaw.com

HMW/sdl
Enclosure