| | |
|---|---|
| SEVERN PEANUT CO., INC., et al, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| INDISTRIAL FUMIGANT CO. and | ) |
| ROLLINS INC., | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on defendants' motion in limine to exclude plaintiffs' expert witnesses [DE 74], and defendants' motion for summary judgment [DE 84]. The motions are now ripe for adjudication. A hearing was held on these matters in Elizabeth City, North Carolina on March 14, 2014 at 11:00 a.m. For the reasons stated herein, the motion to exclude is denied and the motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On April 20, 2009, Industrial Fumigant Co. ("IFC") and Severn Peanut Co. ("Severn") entered into a contract for IFC to fumigate Severn's peanut storage dome ("dome"). On August 4, 2009, IFC applied the fumigant and sealed the dome. Seven days later, Severn discovered smoke coming from the dome and notified IFC. Fire suppression efforts were undertaken, but on August 29, 2009, there was an explosion in the dome and the dome and peanuts inside sustained severe damage. Severn alleges that it sustained almost $20 million in damages as a result of the fire, which it attributes to defendants' improper application of the pesticide Fumitoxin.

As a result of this incident, plaintiffs filed this suit against defendants on April 8, 2011. Plaintiffs assert claims for negligence, negligence *per se*, and breach of contract. Defendants assert, among other defenses, contributory negligence on the part of Severn. Defendants filed a motion on November 7, 2013 which seeks to exclude the testimony from two of plaintiffs' expert witnesses, Lester V. Rich and John L. Schumacher. Defendants filed their motion for summary judgment on November 26, 2013.

## DISCUSSION

### I.    MOTION TO EXCLUDE.

"[T]he Rules of Evidence . . . assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Phams.*, 509 U.S. 579, 597 (1993). A qualified expert witness may testify in the form of an opinion if his or her testimony: (1) is based on sufficient facts or data; (2) was derived through reliable principles and methods; and (3) is the result of the expert reliably applying those principles and methods to the facts of the case. FED. R. EVID. 702. Expert opinions must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

"The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable – that is, whether it is supported by adequate validation to render it trustworthy." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). "The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue." *Id.* In determining whether the experts' theories or methods are scientifically valid, the Court considers; (1) whether the expert's theory can be verified by the scientific method through testing; (2) whether the expert's theory has been subjected to peer review; (3) whether the expert's method has been evaluated for its potential

2

rate of error; and (4) whether the expert's theory enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005). These factors are not a definitive checklist and many factors may bear on the inquiry. *Daubert*, 509 U.S. at 593.

Defendants claim that the fire causation opinions offered by Rich and Schumacher lack scientific foundation and therefore must be excluded. The experts' opinions are premised on two theories. First, that the Fumitoxin application here resulted in the accumulation of large piles of Fumitoxin tablets on the surface of the peanut pile, and second, that these piles then ignited.

Defendants argue that plaintiffs cannot demonstrate any scientific foundation supporting Rich and Schumacher's theory that piling of the Fumitoxin tablets occurred. They especially focus on the fact that neither expert performed any physical testing to support his theory. This Court finds that plaintiffs have successfully pointed to sufficient evidence to show a scientific foundation for their opinion. Such evidence includes, but is not limited, to the sheer number of tablets distributed through a small opening, a photograph of piled tablets, other expert testimony, the applicators manual and label warnings, and potential gaps in the eyewitnesses' testimony. Without determining whether or not the expert testimony at issue on the question of piling is correct, the Court finds that it does have a sufficient scientific foundation to be reliable. Further, as the evidence relates to the cause of the fire, it is relevant and would be helpful to the jury.

Defendants next argue that Rich and Schumacher do not have an adequate scientific basis to support their theory of ignition. Both parties agree that the publication *NFPA 921: Guide for Fire & Explosion Investigations* (2008 ed.) (hereinafter NFPA 921) is considered authoritative in the field of fire investigations. *See also Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F.

3

Supp. 2d 549, 554 (D. Md. 2011); *Thompson v. State Farm Fire & Cas. Co.*, 548 F. Supp. 2d 588, 592 (W.D. Tenn. 2008). "The systematic approach recommended [for fire and explosion investigation] is that of the scientific method, which is used in the physical sciences." NFPA 921 § 4.2. The scientific method includes recognizing and defining the problem to be solved, collecting data, analyzing data, developing a hypothesis or hypotheses (inductive reasoning), and testing the hypothesis or hypotheses through deductive reasoning. NFPA 921 § 4.3.1–4.3.6. NFPA §§ 4.3 et seq. applies the scientific method to that of fire investigation. Similarly, NFPA 921 § 4.4 et seq. describes the major steps of the investigation from inception through final analysis.

> The actual investigation may include different steps and procedures, which will be determined by the purpose of the assignment. These steps and procedures are described in detail elsewhere in this document. A fire or explosion investigation may include all or some of the following tasks: a scene inspection or review of previous scene documentation done by others; scene documentation through photography and diagraming; evidence recognition, documentation, and preservation; witness interviews; review and analysis of the investigations of others; and identification and collection of data or information from other appropriate sources.

NFPA 921 § 4.4.3.2. Testing of a hypothesis may take many different forms including cognitive experiments. NFPA 921 § 4.3.6.

Defendants main argument against admitting the expert testimony of Rich and Schumacher on the issue of ignition is the complete lack of physical testing the experts undertook to test their theory and a lack of laboratory tests which show that piled aluminum phosphide tablets will ignite without the introduction of liquid water. Here plaintiffs have again successfully shown that the experts' opinions are based on valid scientific principles which are sound and widely accepted.

First plaintiffs have demonstrated that phosphine gas (produced by aluminum phosphide tablets) is a recognized fire hazard in both scientific literature and in the fumigation industry. Various labels required by the EPA contain clear warnings and explanations of the risk of ignition from the piling of tablets. Further they have pointed to general academic acceptance of the theory that the piling of the tablets can cause ignition. The lack of physical testing conducted by the experts themselves is not fatal to plaintiffs' attempt to introduce their testimony. The NFPA 921 states "[a] hypothesis can be tested either physically by conducting experiments or analytically by applying scientific principles in thought experiments." NFPA 921 § 4.3.6. Defendants have pointed to no controlling case law on point that mandates this Court to exclude the experts' testimony because of their lack of testing. Plaintiffs have adequately distinguished the cases on which defendants attempt to rely.

As plaintiffs have demonstrated that there is a valid scientific foundation for their experts' testimony, defendants motion to exclude the testimony of Rich and Schumacher as to their piling and ignition theories is denied.

## II.    MOTION FOR SUMMARY JUDGMENT.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

Defendants first claim that plaintiff's cannot meet their burden of proof that the fire was caused by defendant IFC's Fumitoxin application. However, that argument is premised on the Court granting defendants' motion to exclude plaintiffs' experts which the Court did not do. Accordingly, on this ground defendants' motion for summary judgment is denied. Beyond this argument, defendants raise several issues which they say entitle them to summary judgment. The Court considers them in turn.

A.    The Economic Loss Doctrine.

Defendants attempt to make the same argument that the Court rejected in its order denying defendants' motion to dismiss – that the economic loss doctrine bars plaintiffs' negligence claims. [DE 26 at 3–4]. Defendants urge the court to revisit its decision from November 2011 because, in the interim, a colleague of this Court has applied the economic loss doctrine to what defendant terms a service contract. *See Crop Prod. Servs., Inc. v. Ormond*, 2012 U.S. Dist. LEXIS 5499 (E.D.N.C. Jan. 18, 2012). Further, defendants claim the factual situation in *Ormond* is analogous to the facts in the instant case. However, the decision in *Ormond* is not binding on this Court. Additionally, the court in *Ormond* did not conduct an analysis like this Court did in its prior order under the second *Ports Authority* exception. 240 S.E.2d at 351. Defendants have not offered a reason that justifies revisiting this Court's November 2011 order which found that the peanuts and the dome are "other property" which fall under the second *Port Authority* exception to the economic loss doctrine. [DE 26 at 4]. Accordingly the economic loss

doctrine does not bar plaintiffs' negligence claims and defendants' motion for summary judgment is denied on this issue.

B.    Plaintiffs' Business Losses.

Defendants argue that, in denying the motion to dismiss, this Court found the second *Ports Authority* exception applicable only to plaintiffs' peanuts and storage dome, and, therefore, the exception does not apply to plaintiffs' business losses which are, as a result, unrecoverable. However, defendants cite no law in support of this argument. Defendants, having allegedly destroyed "other property" are liable for all the damages naturally flowing from their negligent act including debris removal, fire suppression, and loss of business income. *See Binder v. Gen. Motors Acceptance Corp.*, 23 S.E.2d 894, 895 (N.C. 1943) ("It is well established that, in a 'pure tort,' the case presented here, the wrongdoer is responsible for all damages directly caused by his misconduct, and for all indirect or consequential damages which are the natural and probable effects of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty."). Accordingly, defendants cannot prevail on their motion for summary judgment as to this point.

C.    The Pesticide Application Agreement Does Not Bar Plaintiffs' Negligence Claims.

Defendants argue that plaintiffs are precluded from suing in negligence because the pesticide application agreement contains certain obligations of the parties. In effect, defendants argue that the agreement lays out certain obligations of the parties and therefore the only redress available to the plaintiffs is for breach of contract even though those obligations contain both statutory and common law elements. North Carolina law, however, allows for the same act to give rise to both a tort and a contract claim. To pursue both tort and contract claims arising out of the same conduct, "a plaintiff must allege a duty owed him by the defendant separate and

7

distinct from any duty owed under a contract." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (quotation omitted). "The duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another; however, the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise. The duty exists independent of the contract." *Oates v. Jag, Inc.*, 333 S.E.2d 222, 225 (N.C. 1985) (quotation omitted).

Here, defendants applied a highly toxic and potentially explosive pesticide which is regulated by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and the North Carolina Pesticide Law of 1971. The fumigant could only be applied by trained and certified applicators in accordance with the label instructions. [DE 87-12; 87-13]. The duties and responsibilities of defendants contained in and established by federal and state statute and separate, distinct, and independent of the duties and obligations contained in the agreement.

FIFRA and the North Carolina Pesticide Law are public safety statutes which impose a specific duty for the protection of others. *See Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d. 263, 266 (N.C. 2006) (holding that a public safety statute is one that imposes a duty for the protection of others). A violation of public safety statutes is negligence per se unless the statute says otherwise. *Hart v. Ivey*, 420 S.E.2d 174, 177 (N.C. 1992).

Defendants assumed a statutory duty to plaintiffs to perform their services in compliance with these public safety statutes. This duty is independent of defendants' contractual obligations. Accordingly, the fact that the pesticide application agreement restates the obligation does not nullify or subsume the duties that existed independently of the contract. The requirement to follow the instruction of the labeling was an independent duty that defendants were obligated by statute to accept and the insertion and repetition of this specific requirement in the body of the

8

agreement does not in any way diminish or alter defendants' statutorily mandated responsibilities or eliminate the negligence remedies available to plaintiffs in the event the duties are breached.

D.   The Pesticide Application Agreement's Damage Exclusions.

i.   Breach of contract claim.

Defendants next argue that the damages plaintiffs seek are excluded by the pesticide application agreement's express terms. In its order denying the motion to dismiss, the Court held that "plaintiffs are contractually barred from proceeding on claims for consequential damages *on their breach of contract claim*." [DE 26 at 5]. Plaintiffs attempt to raise the same public policy arguments here that they raised in the briefing on the motion to dismiss. Much as defendants failed to raise good cause for this Court to revisit its order in regards to the economic loss doctrine, plaintiffs fail to raise good cause for the Court to revisit its decision in regards to the contract's bar to recovery for consequential damages.

In the same order, the Court did not bar plaintiffs from pursuing their claims for direct damages because the Court held that the plaintiffs' loss of the peanuts and dome were arguably direct damages in this case. [DE 26 at 5]. Defendants now ask the Court to consider that the loss of the peanuts and dome are consequential damages as defined by the contract. Indeed, plaintiffs have earlier admitted that the "agreement drafted by defendants defines damage to the dome and peanuts as incidental and consequential." [DE 20 at 10]. Because § 8(h)(II) of the pesticide application agreement shows that plaintiffs agreed that defendants would not be liable for damages to its property, product, equipment, downtime, or loss of business, the Court need not consider whether these damages would ordinarily be considered direct or consequential. Here, the parties have agreed that they are excluded consequential damages.

9

The contract between the parties excludes recovery for consequential damages. All of the losses suffered by plaintiff fall under the agreement's definition of consequential damages. Accordingly, the agreement bars recovery for all damages suffered by plaintiffs in their breach of contract claim, and accordingly, their breach of contract claim must fail. Summary judgment is granted in favor of the defendants as to plaintiffs' breach of contract claim.

          ii.      Negligence claims.

Defendants argue that if the contract's damage exclusions bar plaintiffs' recovery under their breach of contract claim, then it must also do so under their negligence claims. Here, plaintiffs' public policy arguments do ring true. The application of Fumitoxin is extensively regulated and the health and safety of the public is directly implicated. "[A] party cannot protect himself by contract[ing] against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved." *Forston v. McClellan*, 508 S.E.2d 549, 551 (N.C. App. 1998) (quotation omitted). Further, "[c]ontracts for exemption from liability for negligence are not favored by law, and are strictly construed against the party asserting it." *Winkler v. Appalachian Amusement Co.*, 79 S.E.2d 185, 190 (N.C. 1953). There is no clear language in the contract here addressing an exemption from negligence. Finally, as discussed previously, the second *Ports Authority* exception makes clear, "[a] party may [] recover in tort rather than contract for damages to property other than the product itself, if the losses are attributable to the defective product. *Lord v. Customized Consulting Specialty, Inc.*, 643 S.E.2d 28, 30 (N.C. App. 2007). A negligence claim for other property is not controlled by a contract as defendants argue. Accordingly, the damage exclusions in the pesticide application agreement do not bar recovery for plaintiffs' negligence claims.

E.    Piercing the Corporate Veil.

In viewing the facts and inferences drawn from the facts in the light most favorable to the plaintiffs, there is evidence of a genuine factual dispute as to whether Rollins exercised the requisite control over IFC to hold Rollins liable for the acts or omissions of IFC. Rollins provides legal, human resource, payroll, fleet department, and risk management services to IFC. Rollins trained employees of IFC with advanced tools, techniques, and facilities, conducted background checks for new IFC employees, and conducted quality inspection controls to ensure IFC's employees complied with state and federal law. Rollins sent an agent to the site of the fire after its discovery and advised all parties that Rollins would take responsibility of the fire suppression efforts. Further, the finances of IFC are combined with all of Rollins's subsidiaries. Accordingly, defendants' motion for summary judgment in favor of Rollins on the grounds that the corporate veil cannot be pierced is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike is DENIED and defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Summary judgment is granted in favor of the defendants on plaintiffs' breach of contract claim. The remaining claims may proceed in their entirety.

SO ORDERED.

This the __ day of March, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

11