UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

| | |
|---|---|
| SEVERN PEANUT CO, INC., MEHERRIN ) <br> AGRICULTURE & CHEMICAL CO., and ) <br> TRAVELERS PROPERTY CASUALTY ) <br> COMPANY OF AMERICA as Subrogee of ) <br> Severn Peanut Co., Inc. and Meherrin ) <br> Agriculture & Chemical Co., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> INDUSTRIAL FUMIGANT CO. and ) <br> ROLLINS INC., ) <br> ) <br> Defendants. ) | DOCKET NO. 2:11-cv-00014-BO |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO EXCLUDE DEFENDANTS' EXPERT WITNESS DR. CAROL JONES**

Plaintiffs Severn Peanut Co., Inc., Meherrin Agriculture & Chemical Co., and Travelers Property Casualty Company of America, as Subrogee of Severn Peanut Co., Inc and Meherrin Agriculture & Chemical Co., by and through counsel and pursuant to Rule 702 of the Federal Rules of Evidence, hereby supply their memorandum of law in support of their motion to exclude Defendants' expert witness Dr. Carol Jones from offering any opinions regarding the origin and/or cause of the fire at issue.

**STATEMENT OF THE CASE**

This matter arises from Plaintiffs Severn Peanut Co., Inc. ("Severn") and Meherrin Agriculture & Chemical Co. ("Meherrin")'s Complaint filed on April 8, 2011, which asserts claims for negligence, negligence per se, and breach of contract as a result of a fire and subsequent explosion in Severn's peanut storage dome ("Dome") filed against Defendants

1

Industrial Fumigant Co. ("IFC") and Rollins, Inc ("Rollins") (DE #1). Plaintiffs filed a motion to Dismiss which was denied. (DE #26). Plaintiffs filed an amended complaint on January 4, 2012 adding Travelers Property Casualty Company of America as a plaintiff. (DE #34). Plaintiffs moved for partial summary judgment on Defendants contributory negligence defense which was denied. (DE #63). Following the close of discovery, Defendants filed a motion to exclude the testimony of Plaintiffs' experts, Lester Rich and John Schumacher and a subsequent motion for summary judgment. The motion to exclude the Plaintiffs' experts was denied. The motion for summary judgment as it pertained to the negligence and negligence per se claims was denied while the motion for summary judgment as to the contract claim was granted. (DE #101). A Pretrial conference is scheduled for May 12, 2014. (DE #103)

## STATEMENT OF RELEVANT FACTS

Severn stored farmer stock peanuts in its Dome located at its headquarters in Severn, NC and was utilizing the Dome for storage of 21 million pounds of peanuts harvested in the fall of 2008. The Dome stood 96 feet high and 192 feet wide and he interior of the Dome was essentially a bare concrete structure with no lighting, machinery or energized electrical equipment. Pls. Answers to Defs' 1st Set of Int. p. 6 (DE #75-2). On top of the Dome was a small headhouse through which a conveyor belt could dump peanuts into the center of the Dome. There were various steel hatches on the floor of the headhouse which could be removed so as to gain access to the interior of the Dome. (Deposition of R. P. Watson Dep. Vol 1 pp. 168-169, attached as Exhibit A).

On August 4, 2009, IFC performed a fumigation at the dome by using a fumigant named "Fumitoxin." Fumitoxin consists primarily of aluminum phosphide, shaped in to small tablets which interact with the moisture in the air to create pure phosphine gas. Aluminum phosphide is

"pyrophoric" which means it may spontaneously combust upon contact with oxygen without needing elevated temperatures or an applied ignition source. The Fumitoxin applicator's manual, with language required to be included by the EPA, specifically provides the following warning:

> **Aluminum phosphide tablets and pellets, outside their containers, should not be stacked or piled up or contacted with liquid water. This may cause a temperature increase, accelerate the rate of gas production and confine the gas so that ignition could occur.**

Brian Lilley and Randy Turner, the IFC applicators climbed the tower to the headhouse with a total of 98 flasks of Fumitoxin containing 49,000 tablets. They removed one metal hatch measuring 15 x 41 inches and broadcast all 49,000 tablets down onto the pile of peanuts located approximately 20 feet below. Defs.' Resp. to Pls.' 1st Set of Interrogs., p. 3 (DE #75-4). IFC subsequently sealed the Dome and left the premises.

On August 11, 2009, smoke was observed coming out of the headhouse. The fire ultimately destroyed the 21 million pounds of peanuts as well as the Dome itself. Pls.' Answ. To Defs.' 1st Set of Interrog., p. 20 (DE #75-2).

Plaintiffs fire origin and cause experts Lester Rich and John Schumacher have offered testimony that the method of application by the IFC fumigators resulted in piles of Fumitoxin tablets and that the piling of the tablets resulted in ignition.

### DR. CAROL JONES' OPINIONS

Defendants designated Dr. Carol Jones as an expert to offer expert opinions on aspects of the origin and/or cause of the fire in the Dome. However, the opinion of Dr. Jones should be excluded as Dr. Jones has no expertise in the field of the determination of fire origin and cause and furthermore her opinions are mere possibilities and not based on a reasonable degree of certainty. As such, Dr. Jones' opinions do not meet the standard of reliability necessary under the Daubert analysis

Dr. Jones, in her Expert Report issued pursuant to 26(a)(2)(B) (the "Jones Report"), a copy which is attached as Exhibit B, stated she was asked provide her opinions and conclusions as to the storage practices of Severn and the fumigation conducted by IFC. However, Dr. Jones report offers expert opinions beyond "storage practices" and includes opinions regarding the origin and/or cause of fire at Severn. For example, Dr. Jones stated:

"Therefore, any mold developing in the Dome went unremediated, the causes went unremediated and, with no change in the Dome environment, any mold was left to propagate to the point of self-heating and combustion." Jones Report p. 11.

"Consequences of not storing peanuts according to BMP's (best management practices) and not reacting to the increase in temperature due to biological heating led the peanuts in the SPC Dome to continue to heat to a point of ignition. " Jones Report p. 13.

## ARGUMENT

Where a party seeks to offer the opinion testimony of an expert witness, Federal Rules of Evidence 104(a) and 702 together require district courts to make an initial determination of the expert's qualifications and of the relevance and reliability of the testimony. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 580, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir., 2006).

Under *Daubert,* the Court must engage in a two-step inquiry. "First of all, the proffered 'expert' must be qualified to express an expert opinion …. Secondly, the proffered expert opinion must be reliable." *In re TMI Litig.,* 193 F.3d 613, 663 (3d Cir. 1999).

Federal Rule of Evidence 702, entitled "Testimony by Experts" provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

4

When a party challenges an expert's qualifications, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799 (4th Cir. 1989)).

*Daubert* clarifies that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. The court recognizes that "Rule 702 was intended to liberalize the introduction of relevant expert evidence," but that "expert witnesses have the potential to be both powerful and quite misleading." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. A district court has broad latitude in determining whether to admit proposed expert testimony. *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994).

Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Courts have distilled the requirements of Rule 702 into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005).

5

## I. DR. CAROL JONES IS NOT QUALIFIED TO TESTIFY AS TO THE ORIGIN AND/OR CAUSE OF THE FIRE

At her deposition taken on October 10, 2013 in this matter, Dr. Jones testified about her qualifications to opine on the determination of the origin and cause of fires and her conclusions related to the fire. She testified as follows:

> Q. Were you retained to give any opinion as to the origin and cause of the fire?
> A. No, sir.
> Q. And am I correct that you are -- don't feel qualified to give an opinion as to the origin and cause of the fire?
> A. I am not a fire expert.
> Q. And so, yes, you're -- you don't feel you're qualified to give an opinion as to the origin or cause of the fire, is that correct?
> A. That's correct.

Deposition of Dr. Carol Jones ("the Jones Deposition), p. 22, 15-25. A copy of the Jones Deposition is attached as Exhibit C.

> Q: All Right. Do you consider yourself an expert in fire science?
> A: No, sir, that statement was citing Mr. Mills' publication.
> Q: Can you describe for me your understanding of how biological heating would progress to actual ignition?
> A: Other than what he reports in his – in his writings there, that's my only understanding.

Jones Deposition, p. 65, 7-14.

> Q: Would you agree that Mr. Mills basically says that heating – spontaneous heating leading to combustion of commodities is rare?
> A: I have no data one way or the other.
> Q: All right. Mr. Mills states on page 50 of his document, "Fires and explosions are not usually caused by self heating. Therefore other causes, for example, arson should first be examined." Do you have any reason to refute that or think that is wrong?
> A: I have no data one way or the other.
> Q: Okay. Are you familiar with the plateau that Mr. Mills was talking about when it reaches 55 degrees C?
> A: I'm not an expert in that area.
> Q: Would that mean you are not an expert in the area of spontaneous combustion of commodities?
> A. That's true.
> Q: Of agricultural commodities, I mean?
> A: Yes
> Q: That's true?

A: That's true.

Jones Deposition, p. 65, 21-25; p. 66, 1-15.

By her own admission under oath, Dr. Jones is not qualified to testify as an expert in the area of the determination of the origin and cause of fires and therefore should not be permitted to testify as an expert under Rule 702 on any matters related to the origin and cause of the fire at the Severn Dome.

While the court has stated the test for exclusion of an expert based on qualifications is a strict one, that test is readily met when the individual herself admits she has no expertise on the issue for which her opinion is offered. *Kopf v. Skyrm*, 993 F.2d *supra* at 377. *See SMD Software, Inc. v. EMove, Inc.,* 945 F. Supp. 2d 628, 639-640 (E.D.N.C. 2013) (where the Court determined that an expert has "neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered" where the purported expert, in his deposition testimony, admitted he was not an expert in those areas for which he was designated); *See also Snoznik v. Jeld-Wen*. 2010 U.S. Dist. 46814, 2010 WL 1924483 at p.2 (W.D.N.C 2010) (where the Court determined that an expert was not qualified in certain areas based on the expert's concession in his deposition that he did not consider himself an expert in those areas). (A copy of this unpublished opinion is attached as Exhibit D).

Dr. Jones should not be permitted to testify as an expert on any matters related to and/or supporting the determination of the origin or cause of the fire at the Severn Dome.

## II. DR. JONES' OPINION IS NOT RELIABLE

Even if the court were to ignore this expert's lack of qualifications, any opinion expressed by Dr. Jones regarding the fire lacks the reliability necessary for it to be allowed into

7

evidence as Dr. Jones' opinions are expressed as possibilities and not conclusions based on a reasonable degree of certainty.

> Q. Okay. And as you've said before, you have no expertise in determining the origin and cause of fires, correct?
> A. Not fires.
> Q. So it's not your opinion that the -- that there was mold in the dome and that it then progressed to self-heating and to combustion? You're saying that's a possibility?
> A. It's a possibility. There is indication that there was heating going on within the dome.

Jones Deposition, p. 98, 1-9.

* * *

> Q. Okay. On page 13 your second sentence says, "Ultimately, self-heating of the product can lead to ignition and combustion of the peanuts." Again, that's not an opinion as to what happened in the Severn dome, is it?
> A. No.

Jones Deposition, p. 101, 18-23.

* * *

> Q. And the language you've used in this consequence is different so I just want to clarify. What your statement says is, "Consequences of not storing peanuts according to BMP's and not reacting to the increase in temperature due to biological heating led to the peanuts inside the SPC Dome to continue to heat to a point of ignition."
> Now, are you expressing an opinion as to the cause of the fire?
> A. No, sir.
> Q. Okay. So when you say that, you are not at all -- you're not implying that what Severn did by failing to follow BMPs resulted in an ignition of the peanuts, is that right?
> A. That's not my area of expertise.
> Q. Okay. In fact, let me just get this right now. For the record, you have no opinion to a reasonable degree of scientific certainty that Severn's alleged failure to comply with the best management practices for storage, caused the fire, correct?
> A. I have no fire expertise.
> Q. Okay. Let me just -- I'd like to get this for the record if I could and then I don't have to ask you anymore question on that.
> You are unable to express any opinion to a reasonable degree of scientific certainty that Severn's alleged failure to comply with best management practices for the storage of these peanuts caused the fire, correct?
> A. I'm not a fire expert so I cannot make that statement.

8

| | | |
|---|---|---|
| Q. | Okay. So actually this one sentence, this consequences shouldn't be in your report, wouldn't you agree with that? | |
| A. | No, sir, I do not agree with that at all. I put it in my report because it's a possibility that it could have done that. Continued heat to the point of ignition -- I'm talking about self-heating with product there. | |
| Q. | Okay. So basically what you -- what I hear you saying is it would be -- it would better express your opinion if you said that this is a -- one possible consequence would be the ignition of the peanuts, is that -- but then again, you have no -- | |
| A. | That's a possibility. | |
| Q. | But you have no expertise in fire science? | |
| A. | Not in ignition. | |

Jones Deposition, p. 104, 9-25; p. 105, 1-25; p. 106, 1-4.

* * *

| | |
|---|---|
| Q. | You're not saying that -- that -- you're not giving an opinion that the further deterioration of the soldier led to the combustion of the peanuts, are you? |
| A. | I can't say that that led to the combustion of the peanuts. |

Jones Deposition, p. 108, 20-24.

* * *

| | |
|---|---|
| Q. | Okay. And each and every instance where you do consequences, what you're saying is, " This is a possibility -- a possible consequence that could follow." You're not saying that this is definitely what happened, is that right? |
| A. | That's right. |

Jones Deposition, p. 96, 14-19.

Expert testimony is not admissible unless it appears that the witness is in possession of such facts as would enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." *Gilbert v. Gulf Oil Corp.*, 175 F.2d 705, 709 (4th Cir. 1949). See *Jastremski v. United States,* 737 F.2d 666, 671 (7th Cir. 1984) (an expert "must signify a probability supported by some rational basis; mere possibilities will not suffice"); *Wratchford v. S. J. Groves & Sons Co.,* 405 F.2d at 1066 ("somewhere lines must be drawn by a federal judge, for if the inference sought to be drawn lacks substantial probability, any attempted

9

resolution of the question may well lie within the area of surmise and conjecture"); *Ralston Purina Co. v. Edmunds,* 241 F.2d at 168 ("the jury may not be permitted to guess between competing possibilities"); *Lanza v. Poretti,* 537 F. Supp. 777, 785 (E.D. Pa. 1982) (testimony based on possibilities held speculative, conjectural and, therefore, inadmissible). *cited in Carroll v. Litton Sys.*, 1990 U.S. Dist. LEXIS 16833, 117 (W.D.N.C. Oct. 29, 1990). (A copy of this unpublished opinion is attached as Exhibit E).

## **CONCLUSION**

Based on Dr. Jones' complete lack of qualifications and that her conclusions are couched in terms of possibilities rather than probabilities, Plaintiffs respectfully request that the Court enter an order excluding Dr. Jones from providing expert opinion testimony regarding or related to the origin and/or cause of the fire at issue.

This the 15th day of April, 2014.

Respectfully submitted,

QUICK, WIDIS & NALIBOTSKY, PLLC

s/ Howard M. Widis
Howard M. Widis, Esq., NC Bar # 8094
Jay M. Goldstein, Esq. NC Bar # 22721
Quick, Widis & Nalibotsky, PLLC
2115 Rexford Road, Suite 100
Charlotte, NC 28211
Telephone: (704) 364-2500
Fax: (704) 365-8734
Email: hwidis@qwnlaw.com
        jgoldstein@qwnlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Plaintiffs' Memorandum of Law in Support of the Motion to Exclude Defendants' Expert Witness Dr. Carol Jones was caused to be served electronically upon the counsel of record stated below through the CM/ECF system, on this the 15th day of April, 2014.

> Steven B. Epstein, Esquire
> Poyner Spruill LLP
> sepstein@poynerspruill.com

> s/ Howard M. Widis
> Howard M. Widis