IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

| | | |
|---|---|---|
| SEVERN PEANUT CO., INC., et.al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | DOCKET NO. 2:11-cv-00014-BO |
| | ) | |
| INDUSTRIAL FUMIGANT CO. and | ) | |
| ROLLINS INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW REGARDING CONTRIBUTORY NEGLIGENCE DEFENSE**

Plaintiffs Severn Peanut Company, Inc., Meherrin Agriculture & Chemical Company, and Travelers Property Casualty Company of America as Subrogee of Severn Peanut Co., Inc. and Meherrin Agriculture & Chemical Co. (collectively "Plaintiffs") submit this response to Defendants' Memorandum of Law Regarding Severn Peanut Company's Contributory Negligence ("Brief") [DE #170].

**I.  INTRODUCTION**

Following the submission by Plaintiffs of several motions *in limine*, the Court entered an order requesting that "Defendants brief the Court on the issue of contributory negligence . . . ." September 29, 2014 Order [DE #167]. On October 15, 2014, Defendants submitted their Brief [DE #170] in support of their defense of contributory negligence. The Brief is a rehash of their previous arguments, which posit a separate, independent theory of causation (spontaneous combustion). In support of this theory, Defendants argue that Severn Peanut Company, Inc. ("Severn") is guilty of a host of allegedly negligent storage and monitoring practices. In addition, Defendants argue that Severn was negligent *after* the fire with respect to the control and/or extinguishment of the burning

1

819080
Case 2:11-cv-00014-BO   Document 173   Filed 10/24/14   Page 1 of 14

peanuts. These arguments are essentially the same arguments put forward in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment [DE #56] filed approximately 17 months ago.

The Defendants also included a new argument in their Brief concerning a potential "concurrent" cause theory [DE #170]. This argument was first raised in opposition to a motion *in limine*. *See* Defs.' Memo. of Law in Response to Motion in Limine to Exclude Any Reference to Severn's Storage and Monitoring Practices [DE #163], at 4. Maintaining that the causation theories are completely separate and conceding that Plaintiffs had nothing to do with the Fumitoxin application, Defendants now suggest that there might be a coincidental causation scenario in which the peanuts caught fire at one place because of the Fumitoxin application (on top of the peanut pile) and at another because of spontaneous combustion (deep inside the peanut pile), with both ignitions occurring at roughly the same time. During the entire time that this case has been in litigation, there has never been any contention that there were two fires inside the dome, only one, and both parties have continuously referred to the loss as "the fire." *See, e.g.,* Final Pretrial Order [DE #130], at 3-6. None of the experts in the case have opined regarding a coincidental cause scenario, there is no evidence to support it listed by either side in the Final Pretrial Order [DE #130], and prior to Defendants' briefing on the motion *in limine*, the idea was never mentioned by anyone in the case. It is important to note that even under this strained, last-minute argument, Defendants do not suggest any connection between the two alternative causation theories. Instead, they just argue that a jury might conclude that both occurred coincidentally.

In prior filings, Plaintiffs have pointed out that contributory negligence is not a proper defense in this action because the parties are advancing mutually exclusive theories as to the cause of the fire. *See* Pls.' Memo. of Law in Supp. of Motion in Limine to Exclude Any Reference to

Severn's Storage and Monitoring Practices [DE #137], at 3-5; *see also* Final Pretrial Order [DE #130], at 3. The arguments in Defendants' Brief [DE #170] have been addressed in Plaintiffs' various replies in support of the motions *in limine*. See Pls.' Reply to Defs.' Response in Opp. to Omnibus Motion in Limine [DE #165], at 4-9; Pls.' Reply to Defs.' Memo. of Law in Response to Motion in Limine to Exclude Any Reference to Severn's Alleged Violation of Federal Regulations [DE #164]; Pls.' Reply in Supp. of Motion in Limine to Exclude Any Reference to Severn's Storage and Monitoring Practices [DE #166]; Pls.' Reply to Defs.' Memo. of Law in Response to Motion to Exclude the Testimony of Scott Chant [DE #171].[1]

Given the procedural history of this case and the information that was presented to the Court on the issue of contributory negligence before the Court ordered briefing on Defendants' contributory negligence defense, Plaintiffs will focus on the law of North Carolina with regard to the defense of contributory negligence and will show the Court that even when one assumes the facts of the case are as presented in Defendants' Brief [DE #170], the defense of contributory negligence is still inappropriate in this matter.

---

[1] Plaintiffs obviously take issue with many of the statements set forth in Defendants' Brief [DE #170] and do not concede that the statements or representations of the evidence are accurate based upon the record developed in this case. For example, the publication by the American Peanut Shellers Association titled "Handling and Storage of Farmer Stock Peanuts" is irrelevant to this matter as it does not contain recommendations relative to a dome that stores peanuts, was not created to prevent spontaneous combustion of peanuts, and it simply sets out recommendations to peanut handlers as the document correctly notes that the peanut handlers should reach their own conclusions about the handling and storing of peanuts. *See* Pls.' Memo. of Law in Supp. of Motion in Limine to Exclude Any Reference to Severn's Storage and Monitoring Practices [DE #137], at 6 n.3; Pls.' Reply in Supp. of Motion in Limine to Exclude Any Reference to Severn's Storage and Monitoring Practices [DE #166], at 5. Further, contrary to Defendants' statements in their Brief, Scott Chant stated several times during his deposition that the temperature readings recorded from the temperature monitoring system inside the dome were potentially invalid or unreliable for various reasons. *Compare* Defs.' Brief [DE #170], at 12 n.13, *with* Pls.' Reply to Defs.' Memo. of Law in Response to Motion to Exclude the Testimony of Scott Chant [DE #171], at 8. Furthermore, throughout their Brief, Defendants rely on the testimony of Mr. Chant to support their argument that Severn was negligent; however, as set forth in Plaintiffs' Memorandum of Law in Support of Motion to Exclude the Testimony of Scott Chant [DE #140] and Plaintiffs' reply brief [DE #171], Mr. Chant's testimony should be excluded from trial.

3

819080

## II.     ARGUMENT

### A.     Plaintiffs' and Defendants' Theories on the Cause of the Fire are Mutually Exclusive; Therefore, Contributory Negligence is not a Proper Defense

Since Plaintiffs are alleging one cause for the fire (Fumitoxin application) and Defendants are alleging a completely separate cause (spontaneous combustion), contributory negligence does not come into play. Defendants do not claim that Severn did anything before the fire was discovered that contributed to or combined with Defendants' negligent application of the Fumitoxin. Similarly, Plaintiffs simply deny that there was any spontaneous combustion of the peanuts and they do not suggest that anything Defendants did or failed to do caused peanuts deep within the peanut pile to spontaneously combust. Thus, the cause theories are mutually exclusive and the jury will have to decide which of the two cause theories to accept.

The Supreme Court of North Carolina, as well as several other courts, has found that when facing a situation where there are two completely different causation theories, an instruction on contributory negligence is not warranted. *See Jackson v. McBride*, 154 S.E.2d 468, 472 (N.C. 1967) ("The defendant's pleading and proof, therefore, does not allege or show contributory negligence on the part of the plaintiff. The two parties have alleged and offered evidence to prove ***two entirely different accidents***. . . . The determinative question for the jury was, ***which of these alleged accidents actually occurred***?") (emphasis added); *Fitzpatrick v. A.H. Robbins Co., Inc.*, 126 A.D.2d 513 (N.Y. App. Div. 1987) ("The defendant attempted to establish that the plaintiff's injury stemmed from her own lack of care with respect to her diabetic condition, and was unrelated to the [device]. Thus, the alleged two causes of the plaintiff's [disease] were mutually exclusive and, as such, involved the question of proximate cause, not contributory negligence . . . ."); *Spleas v. Milwaukee & Suburban Transp. Corp.*, 124 N.W.2d 593, 594-95 (Wis. 1963) (finding that trial judge was correct "in not giving the jury the opportunity to compare the negligence of [defendant]

with the negligence of [plaintiff]" where "testimony presented two completely different versions of how the accident happened" because "[i]f the jury believed the testimony of [defendant], there would be no negligence on the part of the defendant," but "if the plaintiff's version were adopted, there could be no negligence on the part of the plaintiff"); *see also Bendorf v. Volkswagenwerk Aktiengeselischaft*, 540 P.2d 835, 840 (N.M. Ct. App. 1975) ("We stress that, in the case at bar, defendant's theory of the case should be stated in term[s] of causation and not in terms of negligence or contributory negligence. . . . It is simply that, when the issue is causation in that either plaintiff's conduct or the product defect caused the injuries, questions of negligence are irrelevant."). In accordance with these authorities, the Court should not submit the issue of contributory negligence to the jury since both parties are asserting mutually exclusive causes of the fire.

As noted above, it is only in very recent briefing that Defendants have begun to suggest that there may be a "concurrent" causation theory. *See* Defs.' Brief [DE #170], at 24-25. However, this theory is completely unsupported by the evidence. None of Defendants' experts have opined that ***the fire*** was caused by a "combination" of Fumitoxin application and spontaneous combustion. A close read of the arguments put forward in the Defendants' briefing shows that they do not even suggest a combination of causes, just a temporal relationship between separate causes. The Defendants recently-constructed concurrent causation theory is merely an attempt to manufacture a basis for a contributory negligence instruction, which does not exist here because there are two separate, mutually exclusive causation theories.

Defendants are not entitled to a contributory negligence instruction based on the factually unsupported statements made in their Brief. *See* 1 Fed. Jury Prac. & Instr. § 7:3 (6th ed. 2014) ("[I]t is error for the court to instruct upon matters about which no evidence has been presented. . . .

5

819080

Case 2:11-cv-00014-BO   Document 173   Filed 10/24/14   Page 5 of 14

[T]o be entitled to [an] instruction, a defendant must show that the proposed instruction is a correct statement of the law, the theory is supported by the evidence, the denial of such an instruction would deny the defendant a fair trial and the theory of defense is not adequately covered by other instructions."); *see also Leardini v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:09-CV-264, 2012 WL 1828897, at *2-3 (W.D.N.C. May 18, 2012) (denying defendants' Rule 59 motion because defendants failed to present evidence to support their affirmative defenses and thus jury instructions on these defenses were not required) (unpublished).

After presenting pages and pages of their view of the record, Defendants lay out the following five points summarizing the evidence that Severn was allegedly negligent prior to Defendants' fumigation of the dome on August 4, 2009:

1. Severn may have failed to exercise due care in ensuring the appropriate moisture content of peanuts loaded in the dome[2];

2. Severn may have failed to exercise due care in operating the dome's aeration system as designed and intended;

3. Severn may have failed to exercise due care in monitoring the condition of the peanuts stored in the dome for the growth of mold;

4. Severn may have failed to exercise due care in regularly monitoring the temperature of the peanuts stored in the dome; and

5. Severn may have failed to exercise due care in appreciating and responding to the rise in temperatures in the peanut pile between March 11 and July 13, 2009.

Defs.' Brief [DE #170], at 18. None of these acts, even if true (which is disputed), would constitute "contributory negligence" with regard to the cause of the fire advocated by Plaintiffs as they have nothing to do with Defendants' Fumitoxin application.

---

[2] As set forth in Plaintiffs' prior briefing, "self heating" does not mean "spontaneous combustion." Defendants cite to the deposition of Dr. Steve Brown in their Brief [DE #170] to support the argument that the regulatory standard of 10.49% moisture content for farmers stock peanuts is to ensure that peanuts do not "self-heat." However, Dr. Brown explains that such low moisture content levels would not result in the decomposition of peanuts to the point of spontaneously combusting. *See* Ex. "A," Depo. of S. Brown, at 114:06-116:24.

6
819080

Defendants have argued that these purported failures by Severn constitute a breach of the standard of care and that these breaches could have caused the fire, but Defendants do not show how these purportedly negligent acts by Severn contributed or combined with Defendants' own negligence to cause the fire. Instead, Defendants contend that somehow a jury could conclude, merely based on factually unsupported speculation, that Severn's "negligent storage and monitoring practices were a ***second, independent cause of the fire***." Defs.' Brief [DE #170], at 25 (emphasis added).[3] As previously stated, this is not supported by the record or Defendants' causation expert. However, the argument is of no consequence here, because even if it is accepted by the Court, it would not support the granting of a contributory negligence instruction or the admission of proof of Plaintiffs' alleged negligence. Contributory negligence "signifies ***contribution*** rather than independent or sole proximate cause." *Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 566 (N.C. 1984) (citation omitted) (emphasis added); *see also Whisnant v. Herrera*, 603 S.E.2d 847, 850 (N.C. Ct. App. 2004) ("If the evidence raises only a 'mere conjecture' of contributory negligence, the issue should not be submitted to the jury.").

The instant action is unlike the few authorities cited in Defendants' Brief [DE #170] regarding the defense of contributory negligence, since this litigation is not only concerned with what caused the fire (the negligent application of Fumitoxin tablets vs. the fantastically theorized phenomenon of farmers stock peanuts spontaneously combusting), but also where the fire began (on top of the peanut pile due to the piling of Fumitoxin tablets vs. deep inside the pile of farmers stock

---

[3] Contrary to Defendants' contention regarding the hypothetical situation set forth on page 25 of the Brief [DE #170], this case is nothing like a car wreck case. That situation is dealing with nothing more than the determination of whose negligence caused the cars to collide, Driver A's or Driver B's. A more apt analogy would be one where Driver A claims that Driver B negligently tossed a cinderblock off a roof hitting his car and causing the alleged damage, *i.e.,* there was no wreck, and Driver B countering that the damage to Driver A's car was actually due to Driver A running into another car. The issue in that situation, like here, is what caused the damage to the property (the cinderblock or a different car). Based upon the theories of the parties, either Driver A caused the damage or Driver B caused the damage–not both. In that case, like here, Driver B may assert a boiler-plate affirmative defense in his answer to Driver A's complaint, but that defense would be inappropriate. The proper defense would be: "I did not cause the plaintiff's loss. The plaintiff was the sole cause of his loss or damage."

peanuts due to the spontaneous combustion of peanuts). As noted in prior briefing, the fact that the piling of aluminum phosphide tablets, *e.g.*, Fumitoxin, can cause a fire has already been recognized by the Fifth Circuit Court of Appeals. *See Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1134-35, 1142 (5th Cir. 1991). However, nobody in this case has any knowledge of a specific incident where farmers stock peanuts spontaneously caught fire.

In cases where contributory negligence is a legitimate defense, the issue is whether the plaintiff's negligence contributed to the same cause he alleges and proves caused his injury. There has to be a combination of negligence (the defendant's and the plaintiff's) regarding a single cause for contributory negligence to come into play. In such cases, if the plaintiff's negligence combines with the defendant's negligence at all in causing the damage, even if it is only 1%, the plaintiff cannot recover. However, in any negligence action, the plaintiff must show that the defendant caused the damage complained of. That is what Plaintiffs here must do at trial–prove that Defendants' negligent application of the Fumitoxin caused the fire inside the dome. With respect to that proof, Defendants can argue that they were not negligent and/or that the Fumitoxin did not cause the fire.[4] As a part of that second option, they are free to argue some other cause, such as spontaneous combustion, ignited the fire. They cannot, however, put on proof of actions they believe caused the spontaneous combustion and label them as contributory negligence with respect to the Fumitoxin application, since there is no connection between Plaintiffs' alleged acts or omissions and the Fumitoxin application.

---

[4] This of course ignores the fact that the piling or stacking of Fumitoxin tablets constitutes negligence *per se*. *See* March 17, 2014 Order [DE #101], at 8-9; Pls.' Reply to Defs.' Memo. of Law in Response to Motion in Limine to Exclude Any Reference to Severn's Alleged Violation of Federal Regulations [DE #164], at 7. If the jury finds that Defendants' chosen method to fumigate the dome (dumping 49,000 tablets from a single access point) resulted in the piling or stacking of the Fumitoxin tablets, then Defendants were negligent as a matter of law and the only issue would be causation.

8

In sum, the parties are asserting separate, distinct, mutually exclusive causes of the fire. Defendants have developed no proof to tie Plaintiffs' alleged acts or omissions to the cause put forth by Plaintiffs. Contributory negligence is not a factor in this situation as has been made clear by the North Carolina Supreme Court. *See, e.g., Jackson v. McBride*, 154 S.E.2d 468, 471-72 (N.C. 1967). Defendants fail to cite any authority for the proposition that this Court must submit the issue of contributory negligence to the jury or allow proof on the issue when the parties argue separate and independent theories on causation.

**B.     Severn's Actions After the Fire do not Constitute Contributory Negligence**

Defendants' argument that Severn failed to mitigate its damages, which is disputed, can somehow constitute contributory negligence is incorrect because a failure to mitigate damages does not constitute contributory negligence.[5] Rather, this issue only relates to the extent of Plaintiffs' damages. Unlike contributory negligence, a failure to mitigate damages is not a bar to recovery, but can be cause for a reduction in the amount of damages that a plaintiff may recover if the plaintiff failed to use reasonable efforts to prevent those damages. *See In re Brokers, Inc.*, 407 B.R. 693, 844 (Bankr. M.D.N.C. 2009) (citing *Smith v. Childs*, 112 N.C. App. 672, 683 (1993)).[6]

---

[5] In their Brief, Defendants contend that Severn may have failed to exercise due care in "responding to the recommendations of Williams Fire to allow the dome to be 'de-inventoried' so that the fire could be successfully fought and extinguished." Defs.' Brief [DE #170], at 18-19. Defendants have also previously couched this same contention as being evidence of Plaintiffs' alleged failure to mitigate their damages. *See* Ex. "B," Defs.' Response to Interrogatories, at pp. 5-6; *see also* Defs.' Memo. of Law in Response to Omnibus Motion in Limine [DE #161], at 9-17; Defs.' Memo. of Law in Response to Motion in Limine to Exclude Any Evidence of Pls.' Failure to Mitigate Damages [DE #169], at 2 n.2.

[6] "A plaintiff has a duty to mitigate damages by using due care to minimize the loss caused by a defendant's negligence." *In re Brokers*, 407 B.R. at 844 (citations omitted). A plaintiff is only required to use reasonable efforts to minimize the loss, which means doing things that require only reasonable exertion or amounts to "a trifling expense." *See id.* (citation omitted). "Reasonable efforts do not include measures that a reasonable person would consider imprudent, impractical, or futile." *Id.* at 844-45 (citation omitted). "Notwithstanding this duty to mitigate, after the injury has begun, a plaintiff is entitled to rely upon representations or assurances by a defendant that the defendant will remedy the injury. . . . Such assurances excuse a plaintiff's failure to mitigate until it becomes apparent that the defendant will not, in fact, follow through on these assurances. . . . The burden is on the defendant to show that the plaintiff neglected to mitigate damages." *Id.* at 845 (citations omitted); *see also* NORTH CAROLINA LAW OF DAMAGES § 2:9 (5th ed. Dec. 2013).

9

Contributory negligence ***presupposes*** negligence on the part of the defendant. *See Jackson*, 154 S.E.2d at 471; *Stewart v. Yellow Cab Co.*, 42 S.E.2d 405, 406 (N.C. 1947). Contributory negligence "occurs either ***before or at the time of the wrongful act*** or omission of the defendant." *Miller v. Miller*, 160 S.E.2d 65, 74 (N.C. 1968) (emphasis added). The actionable negligence here is Defendants' improper application of the Fumitoxin tablets, which caused the fire. How a plaintiff chooses to extinguish a fire that was started by a defendant's negligent act, even if ultimately determined to have not been the most cost-effective or reasonable method (which is disputed here), is not contributory negligence. *See Crawford v. Mintz*, 673 S.E.2d 746, 748-49 (N.C. Ct. App. 2009) (stating that under North Carolina law, where a plaintiff "having the capacity to exercise ordinary care . . . fails to exercise such care, and such failure, ***concurring and cooperating with the actionable negligence*** of defendant contributes to the injury complained of, [the plaintiff] is guilty of contributory negligence") (citation omitted) (first alteration in decision) (emphasis added); *see also Miller*, 160 S.E.2d at 73 ("In North Carolina . . . a plaintiff's negligence which ***concurs*** with that of the defendant ***in producing the occurrence which caused the original injury*** will bar all recovery") (emphasis added); *Noah v. S. Ry. Co.*, 47 S.E.2d 844, 845 (N.C. 1948) ("[C]ontributory negligence . . . signifies contribution rather than independent or sole proximate cause.") (citation omitted).

The reasonableness of Severn's conduct following the fire only affects the extent of recoverable damages and has nothing to do with contributory negligence. When a plaintiff's allegedly negligent conduct occurs ***subsequent*** to the defendant's negligent act causing the damage, the plaintiff's recovery is reduced and not completely barred pursuant to a contributory negligence defense. *See Miller*, 160 S.E.2d at 74; *Andrews v. Carr*, 521 S.E.2d 269, 272-73 (N.C. Ct. App. 1999); *see also Hummer v. Pulley, Watson, King & Lischer, P.A.*, 536 S.E.2d 349, 354-55 (N.C. Ct.

10

819080

Case 2:11-cv-00014-BO   Document 173   Filed 10/24/14   Page 10 of 14

App. 2000) (affirming trial court's decision to grant plaintiff's motion for summary judgment on defense of contributory negligence because "[plaintiff's] original injury was caused by defendants' failure to mail the letter requesting review of the superintendent's recommendation that he be dismissed" thus "defendants' argument that [plaintiff] should have petitioned for judicial review thereafter would only have been relevant as to whether he failed to mitigate his damages"); *Watson v. Storie*, 300 S.E.2d 55, 57 (N.C. Ct. App. 1983) ("Clearly, decedent's failure to promptly obtain medical attention for injuries suffered in the accident in issue cannot be a cause of the accident that produced the injuries. . . . [His] failure to go to the doctor or hospital was a proper subject for the jury to consider concerning mitigation of damages, but under the damage issue rather than under the issue of contributory negligence.").

      Plaintiffs have strenuously argued that the failure to mitigate defense is inappropriate in this case due to various reasons, including, but not limited to, Defendants' decision to become involved in the fire suppression, even to the point of retaining and directing the fire suppression consultant as well as the unique situation of a fire inside a closed dome containing toxic gas facing both Defendants and Plaintiffs. *See* Pls.' Memo. of Law in Supp. of Omnibus Motion in Limine [DE #133], at 5-7; Pls.' Reply to Response in Opp. to Omnibus Motion in Limine [DE #165], at 4-10; Pls.' Memo. of Law in Supp. of Motion in Limine to Exclude Failure to Mitigate Damages [DE #160], at 2-11. While the arguments set forth by Defendants regarding the actions taken after the fire was discovered could be appropriate for the defense of failure to mitigate, they are certainly not appropriate with respect to the defense of contributory negligence. This confusion by Defendants further supports Plaintiffs' argument that a jury would confuse the issues of contributory negligence and the duty to mitigate damages. *See* Pls.' Memo. of Law in Supp. of Motion in Limine to Exclude Failure to Mitigate Damages [DE #160], at 9-10.

11

### III.     CONCLUSION

The parties have presented theories concerning the cause of the fire that are completely different.  In this situation, there is no basis for a contributory negligence instruction or proof on this issue.  Defendants do not contend that any actions on the part of Severn combined or concurred with Defendants' negligence to start the fire in Severn's peanut dome, *i.e.*, there is absolutely no contention by Defendants that Severn's negligence "contributed" to the fire.  Defendants simply deny starting the fire and argue that Severn's acts and omissions caused a fire deep inside the peanut pile that was eventually discovered on August 11, 2009.  Plaintiffs maintain that the fire was started by the application of Fumitoxin, an operation that did not involve any acts or omissions on Plaintiffs' part.  Further, contrary to Defendants' assertions regarding mitigation efforts, which are disputed by Severn, Severn's actions *after* Defendants caused the fire cannot be the basis of a contributory negligence defense under well-established North Carolina jurisprudence.  Plaintiffs request that any contributory negligence instruction be denied, that the defense be stricken, and that all proof offered in support of the defense be excluded.

This the 24th day of October, 2014.

> By:  /s/ James L. Warren III
> James L. Warren III
> Attorney for Plaintiffs
> CARROLL WARREN & PARKER PLLC
> 188 East Capitol St., Suite 1200
> Jackson, Mississippi 39201
> Telephone: (601) 592-1010
> Facsimile:  (601) 592-6060
> Email:  jwarren@cwplaw.com
> MS Bar No. 6966
> LR 83.1 Counsel

By: <u>/s/ Howard M. Widis</u>
Howard M. Widis, NC Bar # 8094
Jay M. Goldstein, NC Bar #22721
QUICK, WIDIS & NALIBOTSKY, PLLC
2115 Rexford Road, Suite 100
Charlotte, North Carolina 28211
Telephone: (704) 364-2500
Facsimile: (704) 365-8734
Email: hwidis@qwnlaw.com
jgoldstein@qwnlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

    William J. Conroy, Esq.
    CAMPBELL TRIAL LAWYERS
    1205 Westlakes Drive, Suite 330
    Berwyn, PA 19312
    Email: wconroy@campbell-trial-lawyers.com

    Steven B. Epstein, Esq.
    POYNER SPRUILL LLP
    301 Fayetteville Street, Suite 1900
    Raleigh, NC 27601
    Email: sepstein@poynerspruill.com

    Timothy W. Wilson
    POYNER SPRUILL LLP
    130 South Franklin Street
    Rocky Mount, NC 27802-0353
    Email: twilson@poynerspruill.com

This the 24th day of October, 2014.

    By:  /s/ James L. Warren III
         James L. Warren III
         Attorney for Plaintiffs
         CARROLL WARREN & PARKER PLLC
         188 East Capitol St., Suite 1200
         Jackson, Mississippi 39201
         Telephone: (601) 592-1010
         Facsimile: (601) 592-6060
         Email: jwarren@cwplaw.com
         MS State Bar No. 6966
         LR 83.1 Counsel